THE ATTORNEY GENERAL
OF TEXAS



GERALD C. MANN

XXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS


Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-3923

Re: Is the holder of a "contract car-
rier" permit, issued under the
authority of the Railroad Commis-
sion of Texas, subject to the oc-
cupation tax on gross receipts
levied by Article 7066b, Vernon's
Texas Civil Statutes, despite the
fact that such gross receipts are
derived exclusively from trans-
porting property for hire or com-
pensation for the United States
Army, on shipments originating and
terminating at army camps, posts,
depots and sites but passing through
two or more incorporated cities,
towns or villages?

Your letter of March 10, 1942 submits for our opinion the fol-
lowing question, which we quote therefrom:

"Article XIV of House Bill No. 8 of the Forty-seventh
Legislature provides for a quarterly gross receipts tax of
2.2% on receipts earned by Contract Carriers and such Con-
tract Carrier being identified in Chapter 277, Acts of the
Regular Session of the Forty-second Legislature.

"This department has been holding that a Contract
Carrier, operating under a permit from the Railroad Com-
mission, who makes hauls between one incorporated town
and another incorporated town within this State is subject
to the gross receipts tax.

"I now have an inquiry from Spears, Taylor & Spears of
San Antonio, Texas, copy of which I am enclosing, on behalf
of one of their clients who hauls commodities for the United
States Army. You will note they state that none of the mer-
chandise is picked up or delivered in incorporated towns or
cities, but it is my understanding that they may traverse
through two or more incorporated towns to reach their destination.

"Please tell me if, in your opinion, the fact that
the receipts are earned on hauls for the United States
Army would exempt them from payment of gross receipts tax
as provided for in Article XIV of House Bill No. 8 of the
Forty-seventh Legislature."

You also attach copy of letter from Spears, Taylor and Spears,
Attorneys of San Antonio, Texas, pointing out that the hauls made by
the contract carrier in question are not picked up or delivered in in-
corporated cities or towns but are exclusively for the United States
Army, originating and terminating in army camps, depots, posts and sites.
It is suggested therein that in view of such circumstances, said carrier
does not fall within the scope and purview of the taxing Act.

Article 7066b, Vernon's Texas Civil Statutes, levies the fol-
lowing occupation tax upon the gross receipts of each "motor bus company,"
"motor carrier" or "contract carrier:"

"(a)  Each individual, partnership, company, association,
or corporation doing business as a 'motor bus company' as defined
in Chapter 270, Acts Regular Session of the Fortieth Legislature,
as amended by the Acts of 1929, First Called Session of the
Forty-first Legislature, Chapter 78, or as 'motor carrier' or
'contract carrier' as defined in Chapter 277, Acts Regular Session
of the Forty-second Legislature, over and by use of the public
highways of this State, shall make quarterly on the first day of
January, April, July, and October of each year, a report to the
Comptroller, under oath, of the individual, partnership, company,
association, or corporation by its president, treasurer, or
secretary, showing the gross amount received from intrastate
business done within this State in the payment of charges for
transporting persons for compensation and any freight or commodity
for hire, or from other sources of revenue received from intra-
state business within this State during the quarter next preceding.
Said individual, partnership, company, association, or corporation
at the time of making said report, shall pay to the State Treasurer
an occupation tax for the quarter beginning on said date equal
to two and two tenths (2.2) per cent of said gross receipts, as
shown by said report.  Provided, however, carriers of persons or
property who are required to pay an intangible assets tax under
the laws of this State, are hereby exempted from the provisions
of this Article of this Act."

The above tax Act refers to Chapter 277, Acts, Regular Session,
42nd Legislature, Article 911b, Vernon's Texas Civil Statutes, for the
definition of a "contract carrier," subject to the tax thereby levied.

We quote said definition from the statute advised to:

"(h)  The term 'contract carrier' means any motor carrier

as hereinabove defined transporting property for compensation
or hire over any highway in this State other than as a common carrier."

"Motor carrier" as used in the foregoing definition, is, in
turn, defined by subdivision (g) of said Act as follows:

"The term 'motor carrier' means any person, firm, cor-
poration, company, co-partnership, association or joint
stock association, and their lessees, receivers or trustees
appointed by any Court whatsoever, owning, controlling,
managing, operating or causing to be operated any motor
propelled vehicle used in transporting property for compen-
sation or hire over any public highway in this State,
where in the course of such transportation a highway be-
tween two or more incorporated cities, towns or villages
is traversed; provided that the term 'motor carrier' as
used in this Act shall not include and this Act shall not
apply to motor vehicles operated exclusively within the
incorporated limits of cities or towns." (Emphasis ours)

The requirements of the statutory definition of a "motor car-
rier," underlined above, have, by our opinion No. 0-1592, been held to
be met and satisfied where two or more incorporated cities, towns or
villages are involved or traversed by a person, firm or corporation trans-
porting property for hire, even though such incorporated city, town or
village is not the point of origin or the terminus of the shipment. We
believe such opinion to be determinative of the status of the subject
concern as a "motor Carrier," subject to the jurisdiction of the Railroad
Commission and this gross receipts tax, despite the fact that the goods
transported are picked up and delivered on army posts, camps, depots and
sites and not in incorporated cities, towns or villages, provided two or
more incorporated cities, towns or villages are traversed en route. We
enclose a copy of such opinion for your consideration.

It remains to be determined whether or not the "contract car-
rier" in question is exempt from reporting and paying the occupation tax
levied by Article 7066b, Vernon's Texas Civil Statutes, by virtue of the
fact that its gross receipts, upon which said tax is computed under the
Act, are derived exclusively from payments or compensation from the
United States of America for the transportation of property for and on
behalf of the Army of the United States. The only theory upon which
such immunity from State taxation could rest in the instant case would
be that the levying of such tax upon gross receipts derived from the U. S.
Treasury would be tantamount to a tax burden upon the United States
Government or an agency or instrumentality thereof and therefore unconsti-
tutional. We will address ourselves to that point.

The incidence of the tax levied upon a "contract carrier" falls
squarely upon such carrier, for the privilege of conducting the business
allowed by its permit and there is no requirement in the statute that

such tax should be passed on and collected from the shipper or the person paying for such transportation services. The tax is an occupation tax directly upon the person, firm or corporation pursuing the described business, and the quarterly gross receipts are merely used as a medium for computing such tax, the source of such receipts being of no materiality. Even though the amount of such tax should, as a matter of sound business practice, be passed on the the Federal Government, as part of the cost or compensation for transporting goods for the Army, nevertheless, such tax or burden would be too remote and indirect to be considered unconstitutional.

The situation is analogous to that before the United States Supreme Court in James v. Dravo Construction Co., 302 U. S. 134, wherein it was held that the State of West Virginia might collect a tax of 2% on the gross receipts of a contractor from work performed by him in the construction of dams and locks for the Federal Government in the State. Chief Justice Hughes, in the opinion in that case declared, at page 160:

"But if if be assumed that the gross receipts tax may increase the cost to the Government, that fact would not invalidate the tax. With respect to that effect, a tax on the contractor's gross receipts would not differ from a tax on the contractor's property and equipment necessarily used in the performance of the contract. Concededly, such a tax may validly be laid. Property taxes are naturally, as in this case, reckoned as a part of the expense of doing the work. Taxes may validly be laid not only on the contractor's machinery but on the fuel used to operate it. In Trinity Farm Construction Co. v. Grosjean, 291 U. S. 466, the taxpayer entered into a contract with the Federal Government for the construction of levees in aid of navigation and gasoline was used to supply power for taxpayer's machinery. A state excise tax on the gasoline so used was sustained. The Court said that if the payment of the state taxes imposed on the property and operations of the taxpayer 'affects the federal government at all, it at most gives rise to a burden which is consequential and remote and not to one that is necessary, immediate or direct.' But a tax of that sort unquestionably increases the expense of the contractor in performing his service and may, if it enters into the contractor's estimate, increase the cost to the Government. The fact that the tax on the gross receipts of the contractor in the Alward case (Alward v. Johnson, 282 U. S. 509) might have increased the cost to the government of the carriage of the mails did not impress the Court as militating against its validity."

While the Dravo case was decided by a divided court, its authority cannot now be questioned, having been recently cited with approval by the United States Supreme Court in the opinion by Chief Justice Stone, announcing the unanimous decision of the court in Alabama v. King

& Boozer, 86 L. Ed. 1, wherein a state sales tax of 2% upon building materials was sustained as applying to materials purchased by a contractor engaged in constructing an army camp for the United States under a "cost-plus-a-fixed-fee" contract. We quote from the opinion in the King & Boozer case:

"So far as such a nondiscriminatory state tax upon the contractor enters into the cost of the materials to the Government, that is but a normal incident of the organization within the same territory, of two independent taxing sovereignties. The asserted right of the one to be free of taxation by the other does not spell immunity from paying the added costs, attributable to the taxation of those who furnish supplies to the Government and who have been granted no tax immunity. So far as a different view has prevailed, see Panhandle Oil Co. v. Mississippi (277 U. S. 218) and Graves v. Texas Co. (298 U. S. 393), we think it no longer tenable."

We think the question submitted by you is foreclosed by the above decisions and should accordingly be answered in the negative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

BY s/Pat M. Neff, Jr.
Pat M. Neff, Jr.
Assistant

PMN:ej:wc

APPROVED APRIL 8, 1942
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By BWB Chairman